FILED

JUL 14 2020

U.S. DISTRICT COURT-WVND
CLARKSBURG, WV 26301



**United States Department of Justice**

*William J. Powell*
*United States Attorney's Office*
*Northern District of West Virginia*

United States Courthouse
1125 Chapline Street          Phone: (304) 234-0100
Suite 3000                    FAX: (304) 234-0111
Wheeling, WV 26003

David P. Hoose, Esq.                          June 24, 2020
100 Main Street
Northampton, MA 01060
*VIA E-MAIL DELIVERY*

    Re:    United States v. Reta MAYS, Criminal Action No. 1:20-CR-27

Dear Mr. Hoose:

    This will confirm conversations with you concerning your client, Reta Mays (hereinafter referred to as "Defendant" or "Ms. Mays"). All references to the "Guidelines" refer to the guidelines established by the United States Sentencing Commission, effective November 1, 1987, as amended.

    **Subject to the approval of the Attorney General of the United States**, it is agreed between the United States and your client as follows:

    1.    It is understood by the parties that this plea agreement is conditioned upon approval by the Attorney General of the United States. Absent such approval, this agreement is null and void. The parties understand that the signature of the United States Attorney on this agreement does not constitute a recommendation to the Attorney General of the United States that the agreement should be approved. The parties further agree that if the Attorney General does not approve this agreement, it is not admissible at trial for any purpose, in either the guilt/innocence or penalty phases, including as evidence that the United States Attorney's Office supported a plea agreement in this case.

    2.    Ms. Mays will waive her right to have her case presented to a Grand Jury and plead guilty to an eight-count Information to be filed in this district, charging the following offenses:

_____          7/11/2020
Mays, Defendant                    Date

_____          7/11/20
Hoose, Esq.                        Date
Defendant
- cc Amic, Esq.

- 1 -

   a. Count One:    Second Degree Murder of Robert Edge, Sr., in violation of Title 18, United States Code, Section 1111;
   b. Count Two:    Second Degree Murder of Robert Kozul, in violation of Title 18, United States Code, Section 1111;
   c. Count Three:  Second Degree Murder of Archie Edgell, in violation of Title 18, United States Code, Section 1111;
   d. Count Four:   Second Degree Murder of George Shaw, in violation of Title 18, United States Code, Section 1111;
   e. Count Five:   Second Degree Murder of W.A.H., in violation of Title 18, United States Code, Section 1111;
   f. Count Six:    Second Degree Murder of Felix McDermott, in violation of Title 18, United States Code, Section 1111;
   g. Count Seven:  Second Degree Murder of Raymond Golden, in violation of Title 18, United States Code, Section 1111; and
   h. Count Eight:  Assault with Intent to Commit Murder of R.R.P., in violation of Title 18, United States Code, Section 113(a)(1).

   3.     The maximum penalty to which Ms. Mays will be exposed by virtue of her pleas of guilty to Counts One through Seven, for each count, is: life imprisonment, a fine of $250,000, and five (5) years of supervised release pursuant to Title 18, United States Code, Sections 1111, 3559(a)(1), 3571(b)(3), 3583(b)(1).

   The maximum penalty to which Ms. Mays will be exposed by virtue of her plea of guilty to Count Eight is: twenty (20) years of imprisonment, a fine of $250,000; and three (3) years of supervised release pursuant to Title 18, United States Code, Sections 113(a)(1), 3559(a)(3), 3571(b)(3), and 3583(b)(2).

   Ms. Mays will also be required to pay a mandatory special assessment of $800.00, (Title 18, United States Code, Section 3013) which must be paid before the date of sentencing by money order, or certified check, made payable to the United States District Court. It is also understood that Ms. Mays might be required by the Court to pay the costs of her incarceration.

   4.     Pursuant to Sections 6B1.4 and 1B1.3 of the Guidelines, the parties hereby stipulate and agree that the base offense level for each of Counts One through Seven is a **Base Offense Level 38** pursuant to Section 2A1.2(a) because the offenses are second degree murders.

   Regarding Count Eight, the parties hereby stipulate and agree to a **Base Offense Level 27** pursuant to Section 2A2.1(a)(2), because the object of the offense would not have constituted first degree murder, and to a **four-level increase** pursuant to Section 2A2.1(b)(1)(A) because the victim sustained permanent or life-threatening bodily injury.

_____          7/11/2020
Reta Mays, Defendant                       Date

_____          7/4/20
~~David P. Hoose,~~ Esq.                   Date
Counsel for Defendant

Jay T. McCamic, Esq.

- 2 -

For all counts, the parties hereby stipulate and agree to a **two-level increase** pursuant to Section 3A1.1 because Ms. Mays knew or should have known that the victims of the offenses were vulnerable victims due to age and physical and/or mental condition.

The parties understand that pursuant to Section 6B1.4(d), the Court is not bound by the above stipulations, and if not accepted by the Court, Ms. Mays will not have the right to withdraw her plea of guilty.

5.  In support of the pleas of guilty outlined in paragraph 2 and the U.S. Sentencings Guidelines stipulations described in paragraph 4, the parties hereby stipulate and agree to the following facts:

a. Background:

At all relevant times, the United States Department of Veterans Affairs operated a hospital in Clarksburg, Harrison County, West Virginia, named Louis A. Johnson Veterans Affairs Medical Center ("VAMC Clarksburg"), to provide healthcare services to eligible veterans of the United States military. At all relevant times, VAMC Clarksburg was a federal healthcare facility situated on land acquired for the use of the United States and under its jurisdiction.

At all relevant times, VAMC Clarksburg employed Ms. Mays as a nursing assistant responsible for measuring patients' vital signs, documenting patients' intake and output, testing patients' blood glucose levels with a glucometer, and sitting one on one with patients who required close observation. At no time was Ms. Mays qualified or authorized to administer medication, including insulin.

At all relevant times, Ms. Mays was assigned to work the night shift, 7:30 p.m. to 8:00 a.m., in VAMC Clarksburg's medical surgical unit, referred to as Ward 3A.

b. Robert Edge, Sr.:

During the July 19-20, 2017 night shift at VAMC Clarksburg, 82-year-old Robert Edge, Sr. was an inpatient in Ward 3A. On this night shift, Ms. Mays, while sitting one on one with Mr. Edge, willfully, deliberately, and without authorization, administered insulin to Mr. Edge, who was a Type 2 diabetic but who had not received any prescribed insulin during his admission. Following this administration, Mr. Edge suffered a severe hypoglycemic event, marked by a blood glucose level of 17, as measured by a glucometer. Despite hospital staff administering several ampules of Dextrose 50 to Mr. Edge in an attempt to raise his level of blood glucose, he did not recover from his hypoglycemia. On the afternoon of July 20, 2017, Mr. Edge died. The insulin that Ms. Mays administered to Mr. Edge was the but-for cause of his death, as Ms. Mays had intended.

| | |
|---|---|
| _/s/ Reta P. Mays_ | 7/11/2020 |
| Reta Mays, Defendant | Date |
| _/s/_ ~~David P. Hoose, Esq.~~ | 7/11/20 |
| Counsel for Defendant | Date |
| Jay T. McCamic, Esq. | |

- 3 -

c. <u>Robert Kozul</u>:

During the January 28-29, 2018 night shift at VAMC Clarksburg, 89-year-old Robert Kozul was an inpatient in Ward 3A. On this night shift, Ms. Mays, while sitting one on one with Mr. Kozul, willfully, deliberately, and without authorization, administered insulin to Mr. Kozul, who was not a diabetic and not prescribed insulin. Following this administration, Mr. Kozul suffered a severe hypoglycemic event, marked by a blood glucose level of 27, as measured by the VAMC Clarksburg laboratory. Despite hospital staff administering several ampules of Dextrose 50 to Mr. Kozul in an attempt to raise his level of blood glucose, he did not recover from his hypoglycemia. On January 30, 2018, at approximately 1:00 a.m., Mr. Kozul died. The insulin that Ms. Mays administered to Mr. Kozul was the but-for cause of his death, as Ms. Mays had intended.

d. <u>Archie Edgell</u>:

During the March 23-24, 2018 night shift at VAMC Clarksburg, 84-year-old Archie Edgell was an inpatient in Ward 3A. On this night shift, Ms. Mays, while sitting one on one with Mr. Edgell, willfully, deliberately, and without authorization, administered insulin to Mr. Edgell, who was who was a Type 2 diabetic but who had not received any prescribed insulin during his admission. Following this administration, Mr. Edgell suffered a severe hypoglycemic event, marked by a blood glucose level of 24, as measured by a glucometer. Hospital staff administered several ampules of Dextrose 50 to Mr. Edgell over the next 24 hours. On the night shift of March 24-25, 2018, Ms. Mays, while sitting one on one with Mr. Edgell, willfully, deliberately, and without authorization, administered insulin to Mr. Edgell. Following this administration, hospital staff discovered Mr. Edgell to have a blood glucose level of 23, as measured by a glucometer. On the morning of March 26, 2018, Mr. Edgell died. The insulin that Ms. Mays administered to Mr. Edgell was the but-for cause of his death, as Ms. Mays had intended.

e. <u>George Shaw</u>:

During the March 25-26, 2018 night shift at VAMC Clarksburg, 81-year-old George Shaw was an inpatient in Ward 3A. On this night shift, Ms. Mays, while sitting one on one with Mr. Shaw, willfully, deliberately, and without authorization, administered insulin to Mr. Shaw, who was not a diabetic and not prescribed insulin. Following this administration, Mr. Shaw suffered a severe hypoglycemic event, marked by a blood glucose level of 17, as measured by a glucometer. Despite hospital staff administering several ampules of Dextrose 50 and a dose of Glucagon to Mr. Shaw in an attempt to raise his level of blood glucose, he did not recover from his hypoglycemia. On April 10, 2018, Mr. Shaw died, having never returned to his clinical baseline after the hypoglycemic event. The insulin that Ms. Mays administered to Mr. Shaw was the but-for cause of his death, as Ms. Mays had intended.

_[signature]_      7/11/2020
Reta Mays, Defendant      Date

_[signature]_      7/14/20
David P. Hoose, Esq.      Date
Counsel for Defendant

Jay T. McCamic, Esq.

- 4 -

f. W.A.H.:

During the April 3-4, 2018 night shift at VAMC Clarksburg, 96-year-old W.A.H. was an inpatient in Ward 3A. On this night shift, Ms. Mays willfully, deliberately, and without authorization, administered insulin to W.A.H., who was a Type 2 diabetic prescribed a certain type and amount of insulin. Following this administration, W.A.H. suffered a severe hypoglycemic event, marked by several glucometer measurements of a blood glucose level in the 30s. Despite hospital staff administering several ampules of Dextrose 50 to W.A.H. in an attempt to raise his level of blood glucose, he did not recover from his hypoglycemia. On the morning of April 8, 2018, W.A.H. died. The insulin that Ms. Mays administered to W.A.H. was the but-for cause of his death, as Ms. Mays had intended.

g. Felix McDermott:

During the April 8-9, 2018 night shift at VAMC Clarksburg, 82-year-old Felix McDermott was an inpatient in Ward 3A. On this night shift, Ms. Mays willfully, deliberately, and without authorization, administered insulin to Mr. McDermott, who was not a diabetic and not prescribed insulin. Following this administration, Mr. McDermott suffered a severe hypoglycemic event, marked by a blood glucose level of 12, as measured by a glucometer. Despite hospital staff administering several ampules of Dextrose 50 and a dose of Glucagon to Mr. McDermott in an attempt to raise his level of blood glucose, he did not recover from his hypoglycemia. On April 9, 2018, at approximately 9:00 a.m., Mr. McDermott died. The insulin that Ms. Mays administered to Mr. McDermott was the but-for cause of his death, as Ms. Mays had intended.

h. Raymond Golden:

During the June 3-4, 2018 night shift at VAMC Clarksburg, 88-year-old Raymond Golden was an inpatient in Ward 3A. On this night shift, Ms. Mays, while sitting one on one with Mr. Golden, willfully, deliberately, and without authorization, administered insulin to Mr. Golden, who was a Type 2 diabetic who had required only a single administration of a certain type and amount of insulin during his admission. Following this administration, Mr. Golden suffered a severe hypoglycemic event, marked by a blood glucose level of 7, as measured by the VAMC Clarksburg laboratory. Despite hospital staff administering several ampules of Dextrose 50 to Mr. Golden in an attempt to raise his level of blood glucose, he did not recover from his hypoglycemia. On June 8, 2018, Mr. Golden died. The insulin that Ms. Mays administered to Mr. Golden was the but-for cause of his death, as Ms. Mays had intended.

i. R.R.P.:

During the June 17-18, 2018 night shift at VAMC Clarksburg, 92-year-old R.R.P. was an inpatient in Ward 3A at VAMC Clarksburg. On this night shift, Ms. Mays willfully, deliberately, and without

| _[signature]_ | 7/11/2020 |
|---|---|
| Reta Mays, Defendant | Date |
| _[signature]_ | 7/11/20 |
| David P. Hoose, Esq. | Date |
| Counsel for Defendant | |
| Jay T. McCamic, Esq. | |

-5-

authorization, administered insulin to R.R.P., who was not a diabetic and not prescribed insulin. Following this administration, R.R.P. suffered a severe hypoglycemic event, marked by a blood glucose level of 14, as measured by a glucometer. Hospital staff administered several ampules of Dextrose 50 to R.R.P. By June 19, 2018, R.R.P.'s blood glucose had stabilized, and he did not receive any additional Dextrose 50. On July 3, 2018, R.R.P. died at a nursing home. The medical examiner could not opine that insulin was the but-for cause of R.R.P.'s death. However, Ms. Mays had intended to cause R.R.P.'s death when she administered insulin to him during the June 17-18, 2018 night shift.

6.      As part of this plea agreement, and based upon the concessions of the United States in this plea agreement, Ms. Mays knowingly, willingly, and voluntarily gives up the right to seek any additional discovery, except as to relevant and material information in aid of sentencing. Further, Ms. Mays knowingly, willingly, and voluntarily waives all pending requests for discovery.

7.      Ms. Mays waives any right to have sentencing determinations made by a jury and for a jury determination of any and all facts relevant to the application of the United States Sentencing Guidelines provisions and consents to the application of the Guidelines, in conformity with United States v. Booker, 125 S.Ct. 738 (2005), and to a determination of any and all facts and a resolution of the application of any and all Guidelines factors by the United States District Judge. Ms. Mays further agrees that the District Judge should make any sentencing determinations, including, but not limited to, Guidelines determinations, using the preponderance of the evidence standard.

8.      Ms. Mays will be completely forthright and truthful with federal officials in the Northern District of West Virginia and elsewhere with regard to all inquiries made of her and will give signed, sworn statements and grand jury and trial testimony relative thereto. Ms. Mays will agree to submit to a polygraph examination if requested to do so by the United States Attorney's Office for the Northern District of West Virginia.

9.      Nothing contained in any statement or any testimony given by Ms. Mays pursuant to Paragraph 8 will be used against her as the basis for any subsequent prosecution. It is understood that any information obtained from Ms. Mays in compliance with this Agreement will be made known to the sentencing Court. However, pursuant to Guideline 1B1.8, such information may not be used by the Court in determining Ms. Mays's applicable guideline range. This Agreement does not prevent Ms. Mays from being prosecuted for any violations of other Federal and state laws she may have committed should evidence of any such violations be obtained from an independent legitimate source, separate and apart from that information and testimony being provided by her pursuant to this Agreement. In addition, nothing contained in this Agreement shall prevent the United States from prosecuting Ms. Mays for perjury or the giving of a false statement to a federal agent, if such a situation should occur by virtue of her fulfilling the conditions of Paragraph 8 above.

_[signature]_
Reta Mays, Defendant

_[signature]_
~~David P. Hoose, Esq.~~
Counsel for Defendant
Jay T. McCamic, Esq.

7/11/2020
Date

7/4/20
Date

- 6 -

10. At final disposition, the United States will advise the Court of Ms. Mays's forthrightness and truthfulness, or failure to be forthright and truthful, and ask the Court to give the same such weight as the Court deems appropriate.

11. There have been no representations whatsoever by any agent or employee of the United States, or any other law enforcement agency, as to what the final disposition in this matter should or will be. This Agreement includes <u>nonbinding</u> sentencing recommendations by the United States, pursuant to Rule 11(c)(1)(B). However, Ms. Mays understands that the Court is <u>not</u> bound by these sentencing recommendations, and that she has <u>no</u> right to withdraw her guilty plea if the Court does not follow the sentencing recommendations set forth in this Plea Agreement.

12. The United States will make the following <u>nonbinding</u> recommendations: 1) if Ms. Mays accepts responsibility, and if the probation office recommends a two-level reduction for "acceptance of responsibility," as provided by Guideline 3E1.1, the United States will concur in the recommendation; 2) should Ms. Mays give timely and complete information about her own involvement and provide timely notice of her intent to plead guilty, permitting the United States to avoid trial preparation, and comply with all the requirements of this Agreement, the United States will recommend, if applicable, an additional one-level reduction for this "timely acceptance" of responsibility. In order to be eligible for this timely acceptance of responsibility, **Ms. Mays must execute this Plea Agreement on or before 12:00 p.m., July 13, 2020**, and return or fax an executed copy to the United States by that day and time; and, 3) the United States will recommend that a sentence of life imprisonment be imposed on each of Counts One through Seven and that a sentence of twenty (20) years of imprisonment be imposed on Count Eight, with a recommendation that the Court run all sentences consecutively. The United States understands that the defendant will argue for a total sentence of a term of years less than life.

13. If, in the opinion of the United States, Ms. Mays either engages in conduct defined under Application Notes 4(A) through (K) of Guideline 3C1.1, fails to cooperate as promised, fails to make a truthful debriefing, fails to testify fully and truthfully either at grand jury or any trial, fails to pay the special assessment prior to the sentencing hearing, or violates any other provision of the Plea Agreement, then the United States will not be bound to make the foregoing recommendations or take the foregoing actions and Ms. Mays will not have the right to withdraw her guilty plea.

14. Ms. Mays is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, and in exchange for the concessions made by the United States in this plea agreement, the defendant waives the following rights, if the Court sentences the defendant within the statutory maximums of the offenses of conviction.

a. Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This

_____   _____7/11/2020_____
Reta Mays, Defendant         Date

_____   _____7/16/20_____
~~David P. Hoose, Esq.~~      Date
Counsel for Defendant
Jay T. McCamic, Esq.

-7-

includes a waiver of all rights to appeal the Defendant's conviction on the ground that the statute(s) to which the defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s).

b. The Defendant knowingly and expressly waives all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release). With regard to restitution, the defendant acknowledges that the offenses of conviction are offenses for which 18 U.S.C. § 3663A mandates the sentencing court to order restitution.

c. The Defendant knowingly and expressly waives the right to challenge the conviction or the sentence which is within the maximum provided in the statute of conviction or the manner in which it was determined in any post-conviction proceeding, including any proceeding under 28 U.S.C. § 2255.

Nothing in this paragraph, however, will act as a bar to the defendant perfecting any legal remedies she may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct. The defendant agrees that there is currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct.

This waiver of appellate rights is not intended to represent the defendant's estimation of what an appropriate or reasonable sentence would or should be. Nor does this waiver of rights prevent the defendant from arguing for a sentence below the aforementioned adjusted advisory Guideline offense level at sentencing. The United States waives its right to appeal any sentence within the applicable advisory Guideline range. Both parties have the right during any appeal to argue in support of the sentence.

15. The United States reserves the right to provide to the Court and the United States Probation Office, in connection with any presentence investigation that may be ordered pursuant to Rule 32(c) of the Federal Rules of Criminal Procedure, or in connection with the imposition of sentence should the Court, pursuant to Rule 32(c)(1), not order a presentence investigation, relevant information, including information regarding Ms. Mays's background, criminal record, the offense charged in the Information and other pertinent data appearing at Rule 32(c)(2) of the Federal Rules of Criminal Procedure, as will enable the Court to exercise its sentencing discretion. The United States also retains the right to respond to any questions raised by the Court, to correct any inaccuracies or inadequacies in the anticipated

_____  
Reta Mays, Defendant

_____  
David P. Hoose, Esq.  
Counsel for Defendant

Jay T. McCamic, Esq

7/11/2020  
Date

7/11/20  
Date

- 8 -

presentence investigation report to be prepared by the Probation Office of the Court, and to respond to any written or oral statements made to the Court by Ms. Mays or her counsel.

16.     Ms. Mays agrees that all monetary penalties imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States as provided for in Title 18, United States Code, Section 3613. Furthermore, Ms. Mays agrees to provide all requested financial information to the United States and the Probation Office and agrees to participate in any presentencing debtor examinations. Ms. Mays also authorizes the Financial Litigation Unit in the U.S. Attorney's Office for the Northern District of West Virginia to access her credit report from any major credit reporting agency prior to sentencing, in order to assess the financial condition for sentencing purposes. Ms. Mays agrees, under penalty of perjury, to complete a financial statement to be returned with the plea agreement. If the Court imposes a schedule of payments, Ms. Mays agrees that it will be deemed to be merely a minimum schedule of payments, not the only method available to the United States to enforce the judgment. If Ms. Mays is incarcerated, she agrees to participate in the Federal Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. In addition, Ms. Mays agrees that the United States, through the Financial Litigation Unit, may submit any unpaid criminal monetary penalty to the United States Treasury for offset, regardless of the defendant's payment status or history at the time of said submission.

17.     If the defendant's plea is not accepted by the Court or is later set aside or if she breaches any part of this Agreement, then the Office of the United States Attorney will have the right to withdraw any sentencing recommendations and/or to void this Agreement.

18.     The above seventeen (17) paragraphs constitute the entire agreement between Ms. Mays and the United States of America in this matter. **There are no agreements, understandings or promises between the parties other than those contained in this Agreement.**

Very truly yours,

WILLIAM J. POWELL<br>
United States Attorney

By: *[signature]* Jarod J. Douglas<br>
Assistant United States Attorney

As evidenced by my signature at the bottom of the nine (9) pages of this letter agreement, I have read and understand the provisions of each paragraph herein and, hereby, fully approve of each provision.

*[signature]*                                              7/11/2020
Reta Mays, Defendant                                       Date

*[signature]*                                              7/11/20
~~David P. Hoose, Esq.~~                                   Date
Counsel for Defendant
Jay T. McCamic, Esq.

- 9 -